Jeremy J. Patterson
Jeffrey R. Rasmussen
Frances Bassett
Robert T. Lawrence
Patterson Earnhart Real Bird & Wilson
1900 Plaza Drive
Louisville, CO  80027
Telephone: 303.926.5292
jpatterson@nativelawgroup.com
jrasmussen@nativelawgroup.com
fbassett@nativelawgroup.com
rlawrence@nativelawgroup.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

Civil Action No. 22-CV-_____

KEWADIN CASINOS GAMING AUTHORITY,
a duly authorized entity created under the laws of
the Sault Ste. Marie Tribe of Chippewa Indians,

                Plaintiff,

v.

HONORABLE JOYCE DRAGANCHUK,
District Judge, State of Michigan, Ingham County
Circuit Court, in her Individual and Official Capacities,
JLLJ DEVELOPMENT, LLC, a Michigan Limited
Liability Company, and LANSING FUTURE
DEVELOPMENT II, LLC, a Michigan Limited
Liability Company,

                Defendants.

---

## COMPLAINT

---

Through its attorneys, Patterson Earnhart Real Bird & Wilson LLP, Plaintiff Kewadin Casinos Gaming Authority ("Kewadin") alleges the following as its Complaint against the Defendants:

## INTRODUCTION

Kewadin seeks a declaratory judgment that the claims asserted against it by Defendants JLLJ Development, LLC ("JLLJ") and Lansing Future Development II, LLC ("Lansing Future") (collectively, the "Developers") in the Michigan state court lawsuit captioned *JLLJ Development, LLC and Lansing Future Development II, LLC v. Kewadin Casinos Gaming Authority,* Case No. 21-189-CB, Ingham County Circuit Court (hereinafter the "state court lawsuit," attached as Exhibit 4) are barred by Kewadin's tribal sovereign immunity, and the presiding state court therefore lacks subject matter jurisdiction over those claims based upon supreme federal law.  In accordance with the declaratory judgment sought, Plaintiff also seeks this Court's injunction prohibiting Defendant Developers from taking any further action in that State Court suit and an injunction prohibiting Defendant Judge Joyce Draganchuk and the Michigan state courts from exercising jurisdiction over the claims asserted by the Developers in the state court lawsuit.

## JURISDICTION AND VENUE

1.      Kewadin is a department of a federally recognized Indian tribe, and its claims arise under the Constitution, laws, and treaties of the United States.  This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1362 (action brought by an Indian tribe), 28 U.S.C. § 1343 (protection of civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants'

actions from which Plaintiff's claims arise occurred and are occurring within the Western District of Michigan.

## PARTIES

3.      Kewadin is a tribal entity wholly owned by the Sault Ste. Marie Tribe of Chippewa Indians (the "Tribe"), a federally recognized Indian tribe organized under a Constitution approved by the Secretary of the Interior pursuant to Section 16 of the Indian Reorganization Act, 25 U.S.C. § 5123.[1]

4.      Defendant Joyce Draganchuk is the Michigan state court judge exercising jurisdiction over Kewadin in the state court lawsuit in violation of the Constitution, laws, and treaties of the United States.

5.      JLLJ is a Michigan limited liability company with a registered office at 2222 W. Grand River Avenue, Suite A, Okemos MI 48864 and a principal business address of 11485 Grey Friar Way, Chardon, OH 44024.

6.      Lansing Future is a Michigan limited liability company with a registered office at 2222 W. Grand River Avenue, Suite A, Okemos MI 48864 (same registered office as JLLJ) and a principal business address of P.O. Box 172721, Tampa, FL 33672.

## FACTUAL ALLEGATIONS

1.      As a tribal entity wholly owned by the Sault Ste. Marie Tribe of Chippewa Indians, Kewadin enjoys sovereign immunity from suit. Tribal sovereign immunity is a question of federal law.

---

[1] The Tribe's Constitution is available at
https://www.saulttribe.com/images/downloads/history%20and%20culture/story%20of%20our%20people/CONST%202010%20Amendment%20II.pdf

2.      As a tribal entity, Kewadin is only subject to suit in the Michigan Courts if it has lawfully consented to State Court suit.

3.      As a tribal entity, federal law prohibits any lien in law or equity against its lands, and under supreme federal law any contract which permits the Developers to exercise any management authority over the Tribe's casinos or which permits a lien on tribal land is void ab initio where, as here, it has not been approved by the United States.

4.      The Tribe and Kewadin are required to abide by the Tribe's laws, including laws which provide for confidentiality and privilege for documents and for actions by tribal officers.

5.      JLLJ entered into an Amended and Restated Turn-Key Facility Development Agreement (attached as Exhibit 1) with Kewadin on December 19, 2011, pursuant to which Kewadin intended to develop, operate, and maintain a licensed gaming establishment on tribal lands in the Detroit metro area and JLLJ agreed to assist Kewadin with the development, financing, construction, and opening of such a facility.

6.      Lansing Future entered into the Amended and Restated Lansing Turn-Key Facility Development Agreement (attached as Exhibit 2) with Kewadin on December 19, 2011, pursuant to which Kewadin intended to develop, operate, and maintain a licensed gaming establishment on tribal lands in the Lansing metro area, and Lansing Future agreed to assist Kewadin with the development, financing, construction, and opening of such a facility.

7.      The Developers acknowledged in these two contracts (collectively, the "Agreements") they were taking substantial financial risks by investing money that would only be repaid if Kewadin was able to obtain federal approval and other permits and authorizations necessary to build the contemplated casinos.

8.     The Agreements contained strictly limited and conditional waivers of sovereign immunity, wherein the Developers expressly agreed they could sue Kewadin only under certain conditions which include: 1) suit could only be brought in the United States District Court for the Western District of Michigan; and 2) suit could only be brought for recovery of money generated from the operating profits from the casinos contemplated by the contracts.  Exs. 1 and 2, ¶ 6.3.

9.     The Developers allege in the state court lawsuit they collectively provided less than $9 million for the construction of the casinos and anticipated a payday of approximately $124 million if their venture ultimately succeeded.  Ex. 4, ¶¶ 48, 73.

10.     The Agreements expressly contemplate that the casinos may never be built and dictate that if the casinos are not built or otherwise fail to generate operating profits, both the Developers and Kewadin would lose their investments.  See Exs. 1 and 2, ¶¶ 1.2, 4.3, 6.3.

11.     The condition prerequisite to any suit for monetary relief was that the United States took the land for the casinos into federal ownership in trust for the Tribe; that the United States concluded that the land was "gaming eligible" under the Indian Gaming Regulatory Act; that the casinos were built on that federal land; and that profits from that federal land were generated.

12.     The casinos were never built, and thus the only avenue by which the Developers could have recovered against Kewadin under the Agreements was foreclosed.

13.     But in contravention of the Agreements' express terms, the Developers sued Kewadin for the payday they would have obtained if the casinos *had* been built *and* been as profitable as the parties hoped.  See Ex. 4.

14.     Through its State Court suit, Developers are seeking liens against federally owned land, i.e., land that the United States owns in trust for the Tribe and on "casino revenues"

(Complaint, Counts VII, VIII), and they ask for a state court order that Kewadin must build the casino on federal lands (Count X), which would then be subject to the lien sought in Counts VII and VIII, and include open ended requests for other relief, (e.g., Ex. 4, ¶49(f)).

15.     Through its State Court suit, the Developers are seeking management authority over Kewadin's gaming operations.

16.     The contracts between the Developers and Kewadin are void ab initio under federal law because it was not approved by the United States, and any alleged waiver of immunity or consent by Kewadin to suit in any court is therefore void under federal law.

17.     On May 10, 2021, Kewadin moved to dismiss the state court lawsuit under Michigan Court Rules 2116(1), (4), (7) and (10) based on Kewadin's sovereign immunity and the state court's lack of subject matter jurisdiction.  *See* Kewadin's first Motion to Dismiss, attached as Exhibit 12.  At oral argument on the motion, Judge Draganchuk stated she did not view this motion to raise lack of jurisdiction as an issue, and therefore she would not consider whether the court had jurisdiction.  Judge Draganchuk subsequently denied this motion in July of 2021 in an order that provided no reasoning and made only general reference to "reasons stated by the Court on the record" at oral argument.  *See* Order attached as Exhibit 8.

18.     On August 18, 2021, Kewadin again moved to dismiss the state court lawsuit, this time even more explicitly raising the issues of jurisdiction and immunity as a factual attack on the pleadings.  Judge Draganchuk refused to even entertain the second motion, stating in her order that it was "essentially a disguised motion for reconsideration" and therefore untimely despite her earlier assertion at oral argument that she did not decide the question of jurisdiction when ruling on the first motion to dismiss.  *See* Order attached as Exhibit 9.

19.     On August 23, 2021, the Developers issued written discovery to Kewadin. Kewadin responded to these discovery requests with objections based on the state court's lack of subject matter jurisdiction and based upon the fact that Defendant was seeking discovery from the Tribe, a non-party.  The Developers filed a motion to compel on September 4, 2021.

20.     In its discovery motion and at oral argument, the Developers' attorney asserted that discovery from the Tribe was proper because, he claimed without any legal or factual citation and falsely, that Kewadin had, in some unspecified filing, mistakenly referred to itself as the Tribe. Without any legal or factual citation, Judge Draganchuk found that to be sufficient to waive the Tribe's sovereign immunity from discovery.

21.     In granting that motion to compel on October 27, 2021, Judge Draganchuk became visibly and verbally upset because Kewadin was asserting that she was required to decide whether or not she had jurisdiction.  She interrupted Kewadin's argument to angrily state that it was "just simply outrageous" that Kewadin was continuing to assert that she was required to rule on whether or not the State Court had subject matter jurisdiction over the tribal entity.  Ex. 7 at p. 16.

22.     The Judge never let Kewadin complete its argument, and instead asked the Developers' attorneys how much money they wanted in sanctions, then did not let Kewadin respond to the request.  The Judge overruled all objections to discovery, most without any analysis whatsoever, and she granted the Developers' motion and awarded them sanctions against Kewadin in the amount of $1,500.

23.     The Developers then submitted a motion for contempt against Kewadin.  That motion did not comply with numerous well-known and well-established requirements for motions for contempt.  Nevertheless, the State Court promptly set that motion for review.

24. On September 28, 2021, Kewadin moved for reconsideration of Judge Draganchuk's order denying Kewadin's second motion to dismiss on the grounds that the court was required to issue a holding as to whether it has subject matter jurisdiction over the case, and to provide reasoning for its holding that could be reviewed by an appellate court or other court with lawful authority. Judge Draganchuk denied this motion on October 28, 2021.

25. The Developers are acting in bad faith in the State Court, and the facts are sufficient to conclude that the State Court is acting in bad faith. This includes that the Developers have falsely represented facts to the State Court and the State Court has adopted those facts without analysis; that the Developers have openly appealed to anti-Indian stereotypes and that the State Court has not rejected those appeals; that the State Court has made such plain and obviously erroneous orders (including repeatedly refusing to rule on subject matter jurisdiction, when such a ruling is plainly required by state and federal law); the State Court's actions at the discovery motions hearing, as described above; and the fact that the State Court set a patently flawed motion for content for hearing are sufficient to infer bad faith or bias.

## APPLICABLE LAW

26. Indian Tribes are "separate sovereigns pre-existing the Constitution," *Michigan v. Bay Mills Indian Community*, 571 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)). Tribes therefore enjoy "the common law immunity from suit traditionally enjoyed by sovereign powers." *Bay Mills*, 571 U.S. at 788 (quoting *Santa Clara Pueblo*, 436 U.S. at 58). This tribal sovereign immunity is a matter of federal law. *Bay Mills*, 571 U.S. at 788-89.

27. As an arm of the Sault Ste. Marie Tribe, Kewadin also has sovereign immunity from suit. A tribe's sovereign immunity extends to its departments, corporations, and other wholly

owned arms of the tribe and applies regardless of whether the claims arose within the tribe's reservation. *E.g., Bay Mills*, 571 U.S. 782 (state suit to enjoin a tribe's off-reservation casino barred by tribe's sovereign immunity); *Kiowa Tribe*, 523 U.S. at 760 ("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation").

28.     The U.S. Supreme Court has held that tribal sovereign immunity is a jurisdictional barrier to a court's "exercise of judicial power." *United States v. U.S. Fid. Guar. Co.*, 309 U.S. 506, 514 (1940).

29.     An "essential attribute" of sovereign immunity is the "entitlement not to stand trial." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985).  "The entitlement is an *immunity from suit* rather than a mere defense to liability; and … it is effectively lost if a case is erroneously permitted to go to trial." *Id*. at 526 (emphasis in original).

30.     Even if Kewadin had waived its sovereign immunity, "the absence of immunity does not establish the presence of subject-matter jurisdiction" in a state court.  *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007).

31.     When a case brought against a tribe or its members "aris[es] from conduct in Indian country," state courts lack jurisdiction "absent clear congressional authorization." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1204 (10th Cir. 2018).

32.     The federal non-Intercourse Act, 25 U.S.C. § 177, bars any lien in law or equity, against tribal trust property.

### FIRST CLAIM FOR RELIEF
### Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a)

33.     Kewadin incorporates and re-alleges the foregoing paragraphs as if fully set forth

herein.

34.    Absent an express waiver, tribal sovereign immunity bars the Developers' claims against Kewadin.

35.    The conditional waivers of sovereign immunity in the Agreements expressly exclude state court actions and therefore do not permit the Developers to bring claims against Kewadin in state court.

36.    And because the casinos contemplated by the contracts were never built, the conditions necessary for Kewadin to waive sovereign immunity pursuant to the Agreements never materialized.  The conditional waivers of immunity in the Agreements therefore do not permit the relief sought by the Developers, who were fully aware of this condition when they entered into the Agreements.

37.    The Statute of Frauds and the parole evidence rule prohibit a court from considering extrinsic evidence that would contradict the unambiguous terms of the written Agreements.

38.    Kewadin therefore did <u>not</u> waive its sovereign immunity with respect to the Developers' claims in the state court lawsuit.

39.    Moreover, the Michigan state courts lack subject-matter jurisdiction to hear the Developers' claims.

40.    In their state court suit, Developers are seeking a lien which would violate federal law, seeking to have the State Court order Kewadin to build a casino on tribal trust lands which would then be managed by the Developers and/or others subject to State Court supervision, and seeking to order the Tribe and Kewadin to take action on the Tribe's lands which violates tribal and federal law.

41.     In presiding over the state court lawsuit and refusing to dismiss the Developers' claims, Judge Draganchuk is acting without jurisdiction over the subject matter of the lawsuit under color of state law.

42.     Judge Draganchuk's actions have thus deprived Kewadin of its liberty and property interests secured by the due process clause of the Fourteenth Amendment to the U.S. Constitution to have the Developers' claims litigated in a forum that has jurisdiction over the subject matter.

43.     An actual and justiciable controversy under 28 U.S.C. § 2201(a) therefore exists between Kewadin and Defendants.

44.     By this Complaint, Kewadin seeks a declaration and judgment that its sovereign immunity bars the Developers' claims.

45.     By this Complaint, Kewadin seeks a declaration and judgment that Judge Draganchuk and the Michigan state courts lack subject matter jurisdiction.

46.     By this Complaint, Kewadin seeks a declaration and judgment barring Defendants from orders compelling the Tribe and Kewadin to take action within the Tribe's Indian Country or to violate the Tribe's laws.

## SECOND CLAIM FOR RELIEF
### Injunctive Relief

47.     Plaintiff incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

48.     Defendant Judge Draganchuk has repeatedly denied Kewadin's motions to dismiss the state court lawsuit and improperly exercised jurisdiction over Kewadin by imposing sanctions and ordering Kewadin to respond to discovery.

49.     Kewadin is suffering harm at the hands of Defendants because they have

instituted and are allowing the state court lawsuit to proceed in violation of federal law prohibiting the Michigan state courts from exercising civil jurisdiction over the Developers' claims.

50.      If the state court lawsuit is allowed to proceed, the necessity of defending against it will cause irreparable harm to Kewadin.

51.      Kewadin has no adequate remedy at law for the conduct of Judge Draganchuk, and Kewadin's only means of securing relief is this Court's issuance of an injunction halting the state court lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Kewadin respectfully prays for an Order of the Court:

A.      declaring the Developers' claims in the state court lawsuit are barred by Kewadin's tribal sovereign immunity;

B.      declaring the Michigan state courts therefore lack subject matter jurisdiction over the Developers' claims;

C.      declaring that Defendants are barred from seeking or obtaining any order compelling the Tribe or Kewadin to take action within the Tribes' Indian Country or to violate the Tribe's laws.

D.      issuing a temporary restraining order and preliminary injunction ordering the Defendants, and all those in active concert or participation with them, to immediately cease and refrain from proceeding with the state court lawsuit;

E.      permanently enjoining Judge Draganchuk and the Michigan state courts from exercising jurisdiction over the Developers' claims against Kewadin;

F.      awarding attorney fees and costs as allowed by law; and

G.      granting such other and further relief as the Court deems just and proper.


Respectfully submitted this 4th day of February, 2022.


                          __/s/ Jeffrey R. Rasmussen_____
                          Jeremy J. Patterson
                          Jeffrey R. Rasmussen
                          Frances Bassett
                          Robert T. Lawrence
                          Patterson Earnhart Real Bird & Wilson
                          1900 Plaza Drive
                          Louisville, CO  80027
                          Telephone: 303.926.5292
                          jpatterson@nativelawgroup.com
                          jrasmussen@nativelawgroup.com
                          fbassett@nativelawgroup.com
                          rlawrence@nativelawgroup.com

                          *Attorneys for Plaintiff*