UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEWADIN CASINOS GAMING
AUTHORITY,

    Plaintiff,

v.

HON. JOYCE DRAGANCHUK, et al.,

    Defendants.
_____/

Case No. 2:22-cv-27

Hon. Hala Y. Jarbou

# **OPINION**

    Defendants JLLJ Development, LLC and Lansing Future Development II, LLC (collectively, "Developers") brought an action seeking declaratory judgment and alleging contract, quasi-contract, and tort claims against Plaintiff Kewadin Casinos Gaming Authority in state court after a similar action filed in this district was dismissed for lack of subject matter jurisdiction. Kewadin filed suit in this court against Defendant Developers and against Ingham County Circuit Court Judge Joyce Draganchuk, the presiding state court judge, seeking declarations that (1) sovereign immunity bars the Developers' claims, (2) that Judge Dragunchuk and the Michigan state courts lack subject matter jurisdiction, and (3) that the Defendants are barred from compelling the Tribe and Kewadin to take action within the Tribe's Indian Country or to violate the Tribe's laws. (Compl. 11, ECF No. 1.) Kewadin moved for a temporary restraining order (TRO) and preliminary injunction to enjoin the state court from proceeding in that matter, which the Court denied. Before the Court are Defendants' separate motions to dismiss (ECF Nos. 20, 22), and Plaintiff's motion to amend its complaint (ECF No. 38). For the reasons herein, the Court will grant Defendants' motions and deny Plaintiff's motion.

## I. BACKGROUND

Kewadin is the gaming and casino operation department of the Sault Ste. Marie Tribe of Chippewa Indians ("Tribe"), a federally recognized Indian tribe. In 2011, Kewadin entered into separate contracts (collectively, the "Agreements") with the Developers for the purpose of developing two tribal casinos on two parcels of land in Michigan's Lower Peninsula. Kewadin was to purchase the land and then convey it to the United States to be held in trust for the Tribe. Under the Agreements, Kewadin retained the "sole and exclusive authority to operate, manage and maintain the Facility, the equipment and all gaming activities." (JLLJ Agreement, ECF No. 1-2, PageID.17; Lansing Future Agreement, ECF No. 1-3, PageID.61.) The parties expressly decided to not enter into management contracts. (JLLJ Agreement, PageID.17 ("nothing herein is intended to be or shall be construed as constituting a contract for management services as contemplated by IGRA, 25 U.S.C. 2711"); Lansing Future Agreement, PageID.61.) After Kewadin acquired the land, the Department of Interior denied the Tribe's applications to have the land held in trust.

In March 2020, the Developers brought suit against Kewadin in this district for claims arising under state law. Kewadin moved to dismiss based on tribal sovereign immunity. The federal district court dismissed the case on March 20, 2021, for lack of subject matter jurisdiction, without deciding the issue of sovereign immunity. *JLLJ Dev., LLC v. Kewadin Casinos Gaming Auth.*, No. 1:20-cv-231, 2021 WL 1186228 (W.D. Mich. Mar. 30, 2021).

The Developers subsequently refiled the case in state court the next day. Defendant Honorable Joyce Draganchuk is the Michigan Circuit Court judge handling the state case. Kewadin filed a motion to dismiss based on various grounds, including lack of subject matter jurisdiction and sovereign immunity. (2/8/2022 Order, ECF No. 15, PageID.622.) The state court addressed Kewadin's motion as a motion for summary disposition because the motion did not brief the issue of subject matter jurisdiction and focused instead on sovereign immunity. (*Id.*; 6/23/2021

State Ct. Tr., ECF No. 10-3, PageID.276, 293-294.) The state court determined that there had been "an express and unlimited, irrevocable waiver of sovereign immunity" and denied Kewadin's motion. (State Ct. Tr., PageID.303.) Following several motions aimed at reconsidering this determination, the Developers filed a motion to compel discovery, which the court granted. On January 28, 2022, Judge Draganchuk issued Kewadin an Order to Show Cause why Kewadin should not be held in contempt of court for its failure to comply with the court's order compelling discovery. Kewadin subsequently filed suit in this Court along with a motion for a TRO or preliminary injunction seeking to enjoin the state court proceedings. After this Court denied Kewadin's motion, the state court found Kewadin in contempt of court. (*See* Register of Actions, ECF No. 23-1, PageID.703.)

## II. STANDARD

A claim may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To determine whether a pleading fails to state a claim, courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts

3

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). A "'federal court may [also] take judicial notice of proceedings in other courts of record,'" such as bankruptcy courts. *Siner v. City of Detroit*, No. 15-cv-13532, 2017 WL 1190946, at *2 (E.D. Mich. Mar. 30, 2017) (quoting *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

### III. ANALYSIS

Defendant Developers move to dismiss Plaintiff's claims for lack of subject matter jurisdiction, including arguments based on the *Rooker-Feldman* and *Colorado River* doctrines. In addition, Judge Draganchuk argues judicial immunity.

**A. Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 997 (6th Cir. 2020). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Generally, subject matter jurisdiction is established through diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. Plaintiff does not claim diversity

jurisdiction in this matter. Rather, Plaintiff relies on §§ 1331 and 1362. Section 1331 states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A claim arises under federal law, for purposes of federal-question jurisdiction, when the cause of action is (1) created by federal statute or (2) presents a substantial question of federal law." *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020) (citing *Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012-14 (6th Cir. 2018)). A state law cause of action can present a substantial question of federal law if "(1) 'a state-law claim necessarily raise[s] a stated federal issue,' (2) that is 'actually disputed and substantial,' (3) 'which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Est. of Cornell*, 908 F.3d at 1014 (quoting *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). "Whether a cause of action arises under federal law must be apparent from the face of the 'well-pleaded complaint.'" *Miller*, 949 F.3d at 990 (quoting *Metro. Life. Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). In other words, a federal defense does not establish federal question jurisdiction. *Id.*

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). To determine whether declaratory judgment actions satisfy the well-pleaded complaint rule, courts are to "'ask whether, absent the availability of declaratory relief, the case could have [been] brought in federal court.'" *Miller*, 949 F.3d at 990 (quoting 15A James Wm. Moore et al., *Moore's Federal Practice – Civil* § 103.44 (2019)). District courts are to look to the "anticipated claim underlying the request for declaratory relief,

5

. . . , to determine if the face of that claim could arise under federal law." *Id.* (citing *Severe Records LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011)).

Section 1362 states, "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." The "arising under" language that appears in both § 1331 and § 1362 requires the same standard that a plaintiff's complaint must raise a substantial federal question. *See, e.g.*, *Little River Band of Ottawa Indians v. Nat'l Labor Rel. Bd.*, 747 F. Supp. 2d, 872, 883 (W.D. Mich. 2010) (citing *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1166 n.3 (10th Cir. 1999)).

### 1. *JLLJ Development, LLC v. Kewadin Casinos Gaming Authority*

In prior litigation between these parties, Developers brought the same claims alleged in the state court case against Kewadin in federal court. This Court, in an opinion by then Chief Judge Robert Jonker, dismissed the claims for lack of subject matter jurisdiction after examining three avenues to establish federal question jurisdiction.

First, the Court determined that Kewadin's "defense of tribal sovereign immunity is not sufficient to confer federal question subject matter jurisdiction," *JLLJ Dev.,* 2021 WL 1186228, at *3, because a "'defense that raises a federal question is inadequate to confer federal jurisdiction.'" *Id.* (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Next, the Court examined whether jurisdiction could be established if a state law claim presents a substantial question of federal law. The Court acknowledged that federal Indian law and the Indian Gaming Regulatory Act (IGRA) "provide the general backdrop for the parties' dispute." *Id.* The "IGRA requires management contracts to be approved by the Commission Chairman, 25 U.S.C. § 2711(a), and a management contract that is not approved by the Chairman of the Commission is void, 25 C.F.R. §§ 533.7, 535.1(f)." *Id.* at *9 (citing *Tamiami Partners, Ltd.*

6

*v. Miccousukee Tribe of Indians*, 63 F.3d 1030, 1047 (11th Cir. 1995)).  This would indicate that gaming management contracts may establish federal question jurisdiction.  *Id.* (citing William C. Canby, *American Indian Law in a Nutshell*, 371 (5th ed. 2009)).  However, the Court pointed out that the parties had "expressly agreed that the [] Agreements were not intended to be management contracts under the IGRA."  *Id.* at *7.  In particular, the opinion stated "[t]his is not a case involving a contract to manage an actual tribal gaming operation," *id.* at *8, "[i]nstead, [Kewadin] maintained the sole and exclusive authority to operate, manage, and maintain the gaming facility."  *Id.* at *9.  The Court found that the state law claims involved basic contractual commitments which were insufficient to present a substantial question of federal law.  *Id.*

Lastly, the Court analyzed whether the doctrine of complete preemption could establish federal question jurisdiction through the IGRA.  Complete preemption occurs "when a federal statute wholly displaces the state-law cause of action," which converts the state law claim into a federal one for purposes of the well-pleaded complaint rule.  *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  "Complete preemption requires a finding that 'the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'"  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007) (citing *Beneficial Nat'l Bank*, 539 U.S. at 7-8).  The Court distinguished this case from *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) and found that the IGRA does not completely preempt the state law claims in the suit, pointing instead to courts that ruled similarly because "Congress has not provided a federal cause of action in the IGRA."  *JLLJ Dev.,* 2021 WL 1186228, at *5 (citing cases).

### 2. Federal Question Jurisdiction

Kewadin contends that federal question jurisdiction exists on the grounds that it has sovereign immunity from the enforcement of state law, and that the state court lacks subject matter jurisdiction because the IGRA completely preempts state court jurisdiction.

As previously discussed by Judge Jonker, the federal defense of sovereign immunity against state law claims does not confer federal jurisdiction.  This does not change even if Kewadin brings suit in federal court as the plaintiff.  The Declaratory Judgment Act "enlarge[s] the range of remedies available in the federal courts but [does] not extend their jurisdiction." *Skelly Oil Co.*, 339 U.S. at 671.  There is federal jurisdiction over a declaratory judgment action only if the declaratory judgment defendant could have brought an affirmative claim for relief arising under federal law. *Burley v. OneWest Bank, FSB*, Nos. 2:14–1349 WBS EFB, 2:14–1567 WBS EFB, 2014 WL 4244026, at *3 (E.D. Cal. Aug. 26, 2014) (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 16-19 (1983))).  The Developers' claims arise only under state law, and tribal sovereign immunity enters this action only by way of defense against those claims in state court.  *See id.*; *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 875 F.3d 539, 545 (10th Cir. 2017) (reiterating that sovereign immunity as a defense cannot convert a state-law suit into a federal claim, relying on *Okla. Tax Comm'n v. Graham*, 489 U.S. 838 (1989)).  Therefore, Kewadin's claim of tribal sovereign immunity does not establish federal question jurisdiction.

On the other hand, Kewadin's claim that the state court lacks jurisdiction because the IGRA completely preempts state law claims is a matter of federal law. *Lawrence*, 875 F.3d at 543.  Kewadin points to the Tenth Circuit's decision in *Lawrence*, which held that "a suit to enjoin a State from exercising jurisdiction contrary to federal law" is an "action 'arising under' federal law." *Id.* at 544.

The procedural history in *Lawrence* is largely replicated here. Lynn D. Becker, who is not an Indian, filed breach of contract claims against the Ute Indian Tribe of the Uintah and Ouray Reservation in federal district court. The district court dismissed his complaint for lack of subject matter jurisdiction, which the Tenth Circuit affirmed. *Becker v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 946 (10th Cir. 2014). Subsequently, Mr. Becker filed suit in state court, after which the Ute Indian Tribe filed suit in federal district court against both Mr. Becker and Judge Barry Lawrence, the state judge presiding over the suit. The Ute Indian Tribe sought "declarations that (1) the state court lacks subject-matter jurisdiction over the dispute, (2) the Contract is void under federal and tribal law, and (3) there is no valid waiver of the Tribe's sovereign immunity for the claims asserted in state court," and moved for a preliminary injunction against the state court proceedings. *Lawrence*, 875 F.3d at 540. The Ute Indian Tribe invoked jurisdiction under §§ 1331 and 1362. The district court dismissed the Ute Indian Tribe's suit for lack of subject matter jurisdiction. *Lawrence* is the Tenth Circuit's opinion on appeal from that dismissal.

In reviewing the district court's dismissal for lack of jurisdiction, the Tenth Circuit held that "the Tribe's suit seeking an injunction to halt the proceedings in state court is an action 'arising under' federal law," because "federal courts generally have jurisdiction to enjoin the exercise of state regulatory authority (which includes judicial action) contrary to federal law." *Id.* at 543. The Tenth Circuit pointed to *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), in which the Supreme Court stated, "'A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have

9

jurisdiction under 28 U.S.C. § 1331 to resolve.'" *Lawrence*, 875 F.3d at 543 (citing *Shaw*, 463 U.S. at 96 n.14).

The Tenth Circuit addressed Mr. Becker's argument that the court had previously answered the subject matter jurisdiction issue in affirming the dismissal of his suit in *Becker*, and that "[n]othing has changed." *Id.* The court explained that the prior appeal did not involve any question regarding state-court jurisdiction over the contract dispute and there was no state-court proceeding pending or imminent at that time. *Id.* at 545. Moreover, "whether a case arises under federal law can depend on which party to a dispute raises the federal issue." *Id.* at 546 (citing *Franchise Tax Bd.*, 463 U.S. at 4 ("for reasons involving perhaps more history than logic. . .")).

> In *Franchise Tax* the state tax board brought an action against the defendant in state court for a declaratory judgment that the defendant had to honor all its future levies because federal law (ERISA) did not preempt state law; preemption was the only dispute between the parties. The defendant removed the case to federal court. The Supreme Court ruled that the suit did not "arise under" federal law so removal had been improper. Yet the Court indicated that there would have been jurisdiction if the defendant had gone to federal court to enjoin the board's imposition of levies on the ground that the levies were preempted by ERISA: "If [the defendant] could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA, does a declaratory judgment suit by the State 'arise under' federal law? We think not."

*Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 14, 20) (internal citations omitted). The Supreme Court's decision in *Shaw* resolved this point in distinguishing *Franchise Tax Board*, stating,

> The Court's decision [] in *Franchise Tax Board* [] does not call into question the lower courts' jurisdiction to decide these cases. *Franchise Tax Board* was an action seeking a declaration that state laws were *not* pre-empted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim are pre-empted by ERISA, as well as declarations that those laws are pre-empted.

*Shaw*, 463 U.S. at 96 n.14.

This was the distinguishing factor between *Becker* and *Lawrence*. *Lawrence*, 875 F.3d at 547. The Tenth Circuit found that, "in effect, [Mr. Becker] was seeking, among other things, a

10

declaration that his state-law claims *were not* preempted by federal law," whereas the Tribe was "seeking injunctive and declaratory relief against state regulation (the state-court proceedings) that it claims *is* preempted by federal law." *Id.*

Following the logic of *Lawrence* and *Shaw*, this Court has subject matter jurisdiction over Kewadin's claim that state (judicial) regulation is preempted by a federal statute because such a claim presents a federal question. *See Shaw*, 463 U.S. at 96 n.14 ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C § 1331 to resolve."). This was not a claim that the Developers had brought in their federal suit, nor could they, as there was no state court proceeding to seek injunctive relief from. Here, as in *Lawrence*, Judge Jonker's opinion did not address whether the state court had subject matter jurisdiction because the issue had not been raised and there was no state court proceeding pending or imminent at that time.

The Developers point out that Judge Jonker addressed the issue of complete preemption in his opinion dismissing the Developers' suit for lack of subject matter jurisdiction. However, subject matter jurisdiction is established based on the federal question raised, and not the determination of that question.

### B. Principles of Comity

In remanding the case back to the district court, the Tenth Circuit in *Lawrence* recognized that "there may be limitations on the district court's authority to enjoin ongoing state proceedings." *Lawrence*, 875 F.3d at 548. It tasked the district court with addressing those limitations in the first instance, while noting that "'[i]t is possible that section 1362 [federal-question jurisdiction in cases brought by Indian Tribes] authorizes federal courts to enter injunctions against state proceedings.'" *Id.* at 548 n.5 (quoting *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 n.1 (10th Cir. 1995)).

11

### 1. *Rooker-Feldman* Doctrine

When it comes to reviewing state-court judgments, the *Rooker-Feldman* doctrine precludes district courts "from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *see Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) ("[L]ower federal courts possess no power whatsoever to sit in direct review of state court decisions."). More specifically, the *Rooker-Feldman* doctrine precludes district courts from hearing "'[(1)] cases brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced [(4)] and inviting district court review and rejection of those judgments.'" *RLR Investments, LLC v. City of Pigeon Forge*, 4 F.4th 380, 387 (6th Cir. 2021) (quoting *Exxon*, 544 U.S. at 284). Notably, "'there's no complexity'" in deciding whether *Rooker-Feldman* applies "'when the litigant directly asks a federal district court to' declare a state-court order to be unconstitutional and enjoin its enforcement." *Id.* at 388 (quoting *United States v. Alkaramla*, 872 F.3d 532, 534 (7th Cir. 2017)).

The Sixth Circuit has held that *Rooker-Feldman* applies to interlocutory orders from lower state courts, not just to final judgments. *See Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 462 (6th Cir. 2003). The Sixth Circuit affirmed this holding in *RLR Investments* in addressing whether the Supreme Court's opinion in *Exxon* required a modification of the holding in *Pieper* and holding that "*Exxon* and *Pieper* can comfortably coexist." *RLR Investments*, 4 F.4th at 387.

Here, Kewadin brought this suit in federal court after Judge Dragunchuk denied its motion to dismiss, granted the Developers' motion to compel against Kewadin's objections, and denied Kewadin's motions for reconsideration. The state court based its denial of Kewadin's motion to

12

dismiss on its determination that Kewadin had waived sovereign immunity; it did not decide the issue of subject matter jurisdiction because the state court found that Kewadin had not properly briefed the issue. Kewadin claims that "Judge Draganchuk's actions have [] deprived Kewadin of its liberty and property interests secured by the due process clause of the Fourteenth Amendment" because the state court lacks subject matter jurisdiction. (Compl. 11.) Kewadin seeks, among other declarations, "a declaration and judgment that its sovereign immunity bars the Developers' claims" and "a declaration and judgment barring Defendants from orders compelling the Tribe and Kewadin to take action within the Tribe's Indian Country or to violate the Tribe's laws." (*Id.*)

Kewadin contends that the state court orders, such as the determination that Kewadin waived sovereign immunity is not a "judgment" within the meaning of *Rooker-Feldman*.[1] Under *RLR Investments*, the question to ask is "'whether the state court addressed the claim "on the merits."'" *RLR Investments*, 4 F.4th at 389 (quoting *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (quoting *Feldman*, 460 U.S. at 478)). The Sixth Circuit found that the order in *RLR Investments* qualified as a judgment because "the judge made a merits determination" and the decision was not "merely ministerial." *Id.* The Sixth Circuit contrasted the situation with *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889 (6th Cir. 2020) where the court found a writ of garnishment to be ministerial "because '[a] creditor may obtain one simply by filing a form with the court clerk, who then issues the writ as long as the request "appears to be correct."'" *Id.* (quoting *Van Hoven*, 947 F.3d at 892-93). Similar to *RLR Investments*, Judge Dragunchuk made

---

[1] In making this argument, Kewadin blatantly misstates the holding in *In re Smith*, 349 F. App'x 12 (6th Cir. 2009). Kewadin claims that "[t]he Sixth Circuit Court of Appeals held that *Rooker-Feldman* did not apply because the plaintiff's injury was caused by state officials, not the state court judgment denying his petition." (Pl.'s Response 7, ECF No. 31.) The Sixth Circuit, in fact, held the opposite. *In re Smith*, 349 F. App'x at 12 ("We hold that the district court lacked jurisdiction on the basis of the *Rooker-Feldman* doctrine[.]").

13

a merits determination when she found that Kewadin waived sovereign immunity and denied Kewadin's motion to dismiss. Therefore, the state court order qualifies as a judgment.

In sum, Kewadin did not prevail on its motion to dismiss and motions for reconsideration, among other motions, and came to federal court complaining of injuries because of the state court judgments. In effect, Kewadin's request for injunctive and declaratory relief seeks a review of those state court judgments. The source of Kewadin's injuries are the state court judgments. Therefore, under the *Rooker-Feldman* doctrine, this Court is precluded from hearing Kewadin's claims.

### 2. Anti-Injunction Act

The AIA is another limitation on a district court's authority to enjoin ongoing state court proceedings. "The AIA provides that '[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*, 560 F. App'x 699, 705 (10th Cir. 2014) (quoting 28 U.S.C. § 2283). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Kewadin argues that the injunction it seeks fits within the first and second exceptions to the AIA, as well as a fourth exception recognized in case law, that the AIA "does not apply at all when it is the United States that seeks to stay proceedings in a state court." 17A Wright & Miller Fed. Prac. & Proc. Juris. § 4222 (3d ed.).

14

Kewadin argues that this injunction comes within the first exception through 25 U.S.C. § 2710(d)(7)(A)(ii); the Non-Intercourse Act, 25 U.S.C. § 177; and 28 U.S.C. § 1362.[2] This Court previously addressed Kewadin's arguments under the Non-Intercourse Act and § 1362. (2/8/2022 Order, PageID.624-25.) Kewadin fails to provide any new arguments that these statutes are an expressly authorized exception by Congress.

> Under the "expressly authorized" exception, there is no requirement that Congress specifically mention § 2283; rather, statutory language permitting federal court injunctions to issue against state court proceedings can create an "express authorized" exception. Where statutory language does not directly address the matter, we look for relevant legislative history before concluding that Congress expressly authorized the federal court to enjoin state court proceedings.

*In re Parker*, 499 F.3d 616, 626 (6th Cir. 2007) (internal citations omitted).

25 U.S.C. § 2710(d)(7)(A)(ii) states that "The United States district courts shall have jurisdiction over -- (ii) any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect." Kewadin fails to explain how the state court proceedings constitute "class III gaming activity" such that this Court has jurisdiction under this statute and an express exception by Congress to enjoin state court proceedings.

As to the second exception, "where necessary in aid of its jurisdiction," 28 U.S.C. § 2283, Kewadin contends that "the injunction is necessary in aid of this Court's jurisdiction to protect the

---

[2] Kewadin points to one other statute in its briefing, but due to a typo, it is not clear to the Court which statute Kewadin is referring to. (*See* Pl.'s Response 27, ("25 U.S.C.(d)(3)(C)(2) (permitting state jurisdiction over tribal gaming only if authorized by a compact)").) The response's table of authorities suggests that Kewadin may be referring to 25 U.S.C. § 2709(d)(3)(C)(i-ii). (*Id.* at v.) However, 25 U.S.C. § 2709 states, "Notwithstanding any other provision of this chapter, the Secretary shall continue to exercise those authorities vested in the Secretary on the day before October 17, 1988, relating to supervision of Indian gaming until such time as the Commission is organized and prescribes regulations. The Secretary shall provide staff and support assistance to facilitate an orderly transition to regulation of Indian gaming by the Commission." This provision does not support Kewadin's assertion that this statute permits "state jurisdiction over tribal gaming only if authorized by a compact," (Pl.'s Response 27, ECF No. 31), and Kewadin fails to provide an argument for how this statute is an express authorization by Congress to enjoin state court proceedings.

Tribe and Kewadin's federally protected right [from] unlawful state court encroachment and to maintain federal supremacy in Indian affairs." (Pl.'s Response, ECF No. 31, PageID.791.) Again, this Court previously pointed to *Chick Kam Choo v. Exxon Corp*, 486 U.S. 140 (1988), where the Supreme Court stated, "'a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area pre-empted by federal law, even when the interference is unmistakably clear.'" *Id.* at 149 (quoting *Atl. Coast Line*, 398 U.S. at 294). "Rather, when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court." *Id.* at 149-50.

Kewadin points to *Bowen v. Doyle*, 880 F. Supp. 99 (W.D.N.Y. 1995) where the court decided that a "federal injunction [was] necessary" to "defend a federal court's judgments from inconsistent state directives," and to "'preserve the integrity of Indian sovereignty.'" *Id.* at 131 (citing *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1028 (D. Ariz. 1993)). However, the court in *Bowen* issued an injunction pursuant to 42 U.S.C. § 1983, which was amended since *Bowen*. *Peters v. Noonan*, 871 F. Supp. 2d 218, 226 (W.D.N.Y. 2012). Kewadin is not seeking an injunction pursuant to § 1983, and even if it were, the reasoning in *Bowen* is inapplicable due to the amendment of § 1983 after *Bowen* was decided.

Lastly, the Court addressed Kewadin's argument for the fourth exception to the AIA in its previous order and Kewadin has not provided any additional arguments. (2/8/2022 Order, PageID.625.)

Therefore, the AIA also precludes this Court from hearing Kewadin's claims.

**C. Plaintiff's Motion to Amend (ECF No. 38)**

Rule 15 of the Federal Rules of Civil Procedure permit a party to amend its pleading once as a matter of course within twenty-one days of service. Fed. R. Civ. P. 15(a)(1)(A). Afterwards,

16

"[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2).  A "district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." *Knight Cap. Partners Corp. v. Henckel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019).  Futility exists where "the pleading as amended could not withstand a motion to dismiss." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (internal quotations marks omitted).

Kewadin moves to amend its complaint to add additional facts that occurred after the filing of its initial complaint.  These additional facts include an order from the Sault Ste. Marie Gaming Commission holding that the contracts between Kewadin and the Developers are void *ab initio* and other facts relevant to the claims Kewadin has already alleged.  Other than the Gaming Commission order, Kewadin does not describe the other additional facts in its briefing.  Kewadin also seeks to include "additional legal grounds" for claims already alleged.  (Pl.'s Br. in Supp. of its Mot. to Am. 2, ECF No. 39.)  For example, Kewadin seeks to include "added discussion of complete preemption," and "additional discussion of why" "this case is nearly identical to" *Lawrence*.  (*Id.* at 4-5.)

Assessing a motion to amend a complaint includes weighing the futility of amendment using the 12(b)(6) standard.  As discussed above, complaints are to state well-pleaded facts that are facially plausible.  *See Iqbal*, 556 U.S. at 678.  A court will accept factual allegations as true on a motion to dismiss, but not legal conclusions.  *See Bell Atl. Corp.*, 550 U.S. at 555.  An amended complaint is not the mechanism to make more legal arguments for issues that have been

17

briefed in the motions to dismiss. The arguments that Kewadin wishes to elaborate on were raised in its response to Defendants' motions to dismiss.

In its response, Kewadin also raised the issue of the Gaming Commission order. However, the Court has resolved Defendants' motions after considering all of Kewadin's arguments. Amending the complaint to include this fact would not change the Court's conclusion. Accordingly, Kewadin's amended complaint would not survive a motion to dismiss. Therefore, the Court will deny Kewadin's motion.

## IV. CONCLUSION

For the reasons stated, the Court will grant the Defendants' separate motions to dismiss based on the *Rooker-Feldman* doctrine and the AIA. The Court will deny Plaintiff's motion to amend its complaint as it would not survive a motion to dismiss. An order and judgment will enter consistent with this Opinion.

Dated: August 24, 2022          /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE